

Villanova University School of Law
Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-2007

# Schwartz v. Comcast Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4855

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Schwartz v. Comcast Corp" (2007). *2007 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4855
_____

ADAM SCHWARTZ

v.

COMCAST CORPORATION,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-02340)
District Judge:  Honorable Thomas N. O'Neill, Jr.
_____

Argued October 24, 2007
Before:  FISHER, STAPLETON and COWEN, *Circuit Judges*.

Filed:  November 30, 2007

Michael W. McTigue, Jr. (Argued)
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square
Philadelphia, PA  19103
        *Attorney for Appellant*

Ronald J. Smolow (Argued)
Smolow & Landis
204 Two Neshaminy Interplex
Trevose, PA  19053
        *Attorney for Appellee*

———————

OPINION OF THE COURT
———————

FISHER, *Circuit Judge*.

Adam Schwartz sued the Comcast Corporation, alleging that Comcast breached its contract with him by failing to provide high-speed internet services as promised. Comcast filed a motion to compel arbitration. The District Court denied the motion, concluding that Comcast had not established that there was a valid agreement to arbitrate. Comcast now appeals. For the reasons set forth below, we will reverse and remand the case to the District Court.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 2003, Schwartz became a customer of Comcast. At this time, Comcast had a policy of providing a "welcome packet," including a copy of its "Subscriber Agreement," to new customers of its internet services. Schwartz says he did not receive a copy of the Subscriber Agreement when he began receiving service or at any other time.

Comcast's Subscriber Agreement contains an arbitration clause that specifies, "If you and Comcast are unable to resolve informally any claim or dispute related to or arising out of this Agreement or the services provided, you and Comcast agree to binding

2

arbitration . . . ." The Agreement also states that "[a]ll parties to the arbitration must be individually named. There shall be no right or authority for any claims to be arbitrated on a class action or consolidated basis . . . ."

In 2004, Schwartz decided to cancel his Comcast cable television service, but his internet service remained unchanged. When a technician came to his home to disconnect the cable service, Schwartz signed a Comcast Work Order that contained the following language above the signature line: "If other non-installation work was provided, I agree to continue to be bound by the current Comcast Subscriber Agreement." Printed near the center of the form was the notation "O/L PRO SERV," which referred to Schwartz's "Online Pro" internet service.

During a ten-day period in April 2005, Schwartz's Comcast internet service was interrupted and/or unavailable. The Comcast web site has contained or does contain language indicating that its high-speed internet service is "always on."

Schwartz filed a state law class action against Comcast in the Court of Common Pleas of Philadelphia County, Pennsylvania, in April 2005, alleging that Comcast breached its contract and violated the Pennsylvania Consumer Protection Law. Comcast removed the action to federal court under 28 U.S.C. § 1332(d) (the Class Action Fairness Act). Schwartz moved to remand the case, arguing that the District Court lacked jurisdiction under § 1332(d). The District Court denied Schwartz's motion.[1]

---

[1]We conclude that the District Court properly exercised jurisdiction. Section 1332(d) provides that a district court has original jurisdiction over class actions where

Comcast filed a motion to compel arbitration. In his response to the motion, Schwartz argued that (1) there was no arbitration agreement, (2) the dispute falls outside the scope of the arbitration provision, and (3) the Subscriber Agreement is an unconscionable contract of adhesion. Without holding a hearing, the District Court denied the motion, finding that Comcast had failed to establish a valid agreement to arbitrate. The Court did not reach Schwartz's other arguments. Comcast timely appealed the decision.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and 9 U.S.C. § 16(a)(1) (the Federal Arbitration Act, or FAA). "We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. However, to the extent that the district court predicated its decision on findings of fact, our standard of review is whether those findings were clearly erroneous." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 273 (3d Cir. 2004).

---

there is minimal diversity between the parties, the amount in controversy exceeds $5 million, and there are at least 100 class members. Both parties conceded that these criteria were met. However, Schwartz claimed that the District Court was either required or permitted to refrain from exercising jurisdiction under the "home state controversy," "local controversy," or "interests of justice" exceptions. Each of these exceptions requires that a certain proportion of the plaintiff class must be from the original filing state. The District Court found that fewer than one third of the plaintiff class were citizens of Pennsylvania; this proportion neither requires nor allows a district court to decline to exercise jurisdiction. 28 U.S.C. § 1332(d)(3), (4).

4

The District Court correctly determined that the arbitration agreement at issue in this case is governed by the FAA. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The threshold question of the existence of an arbitration agreement is decided by applying ordinary state law contract principles. *China Minmetals Materials Imp. and Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003).

When ruling on a motion to compel arbitration, the District Court uses a standard analogous to the summary judgment standard. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* The party opposing the motion receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* If there is a genuine issue of fact, the FAA directs the District Court to hold a trial to determine whether an arbitration agreement exists. 9 U.S.C. § 4.

### III.

The existence of the arbitration agreement is determined under the law of Pennsylvania, the state where the internet services were provided. Pennsylvania contract law assigns to the party seeking arbitration "the burden of demonstrating that a valid agreement to arbitrate exists between the parties." *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998). Pennsylvania law "favor[s] [the] enforceability of

agreements to arbitrate . . . . However, such agreements are upheld only where it is clear that the parties have agreed to arbitrate in clear and unmistakable manner." *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005).

Comcast's evidence of its consistent practice regarding delivery of subscription agreements and of the conduct of the parties in this case constitute prima facie evidence that Schwartz was aware that the services he accepted were being offered pursuant to a subscription agreement. In response, Schwartz has offered no evidence to the contrary. Indeed, the allegations of his complaint acknowledge such awareness. Schwartz denies only that he received a copy of his subscription agreement. This is not sufficient to create a material dispute of fact. Whether or not Schwartz received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement. RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981) ("[W]here an offer is contained in a writing [a party] may, without reading the writing, manifest assent to it and bind himself without knowing its terms . . . . [A]n offeror or offeree who should be aware of [the terms of a writing] may be bound in accordance with them if he manifests assent.").

Comcast's evidence of its policy to provide the Subscriber Agreement to new customers was relevant to show that Schwartz did in fact receive a copy. Specifically, Comcast provided a declaration and deposition testimony by Vice President Sharon

6

Desmond describing the policy.[2]  The Pennsylvania and Federal Rules of Evidence both

state:

> Evidence of . . . the routine practice of an organization, whether
> corroborated or not and regardless of the presence of eyewitnesses, is
> relevant to prove that the conduct of the . . . organization on a particular
> occasion was in conformity with the . . . routine practice.

Fed. R. Evid. 406; Pa. R. Evid. 406.  The District Court found that evidence of Comcast's

policy "does not constitute proof of actual notice to this particular plaintiff."  This

conclusion was erroneous because under state and federal rules, evidence of the policy

does constitute proof of actual notice to Schwartz.  It is clear that the evidence tends to

show delivery.  Comcast presented evidence that it provided the Subscriber Agreement to

all new customers, including Schwartz.

The District Court agreed with Schwartz that the phrase "O/L PRO SERV" did not

sufficiently notify Schwartz that the September 11, 2004 Work Order pertained to his

internet service as well as his cable television service.  However, it was clear that

Schwartz's Comcast internet service and Comcast cable television were provided by the

same company, or by subsidiaries of the same parent company.  Therefore, the language

on the Work Order ("If other non-installation work was provided, I agree to continue to

be bound by the current Comcast Subscriber Agreement . . .") could have referred only to

---

[2]Schwartz argues that Desmond's testimony was inadmissible because she did not have personal knowledge of the practices she described.  However, he did not make this argument during the proceedings in the District Court, and thus it is waived.  *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002).

7

Schwartz's remaining Comcast service, his internet service. The "O/L PRO SERV" notation was an indication of this fact. Contrary to the District Court's conclusion, the Work Order put Schwartz on notice that he was bound by the Subscriber Agreement.

The parties agree that their business relationship was governed by some form of agreement. However, Comcast argues that the terms of the agreement were those of the Subscriber Agreement, while Schwartz maintains that the only contractual term of which he was aware was Comcast's promise to provide internet service that was "always on."[3] Comcast, as the party seeking arbitration, bears the burden of showing a valid agreement to arbitrate. *Goldstein*, 717 A.2d at 1067. Comcast argues that both parties performed pursuant to the Subscriber Agreement, with Comcast providing the internet service and Schwartz paying the monthly fee. We conclude that the conduct of the parties shows that their relationship was governed by the Subscriber Agreement.

The Subscriber Agreement is activated when internet service is installed, because it states: "The term of this Agreement shall commence upon the installation of your Service . . . ." Schwartz's contention, that the only agreement he was aware of was the

---

[3]Schwartz denies that he was a party to Comcast's Subscriber Agreement. However, in his pleadings, he states that he and other members of the alleged class of plaintiffs are parties to a "subscription agreement" with Comcast, that the agreement's terms are unconscionable, and that Comcast breached the contract. His pleadings also include statements that "Comcast's promises were set forth in its subscription agreements" and "Plaintiff does not have a copy of his subscription agreement and it is therefore not attached." Thus, Schwartz was aware of some form of contractual agreement with Comcast that does not consist solely of a promise to provide internet service that is "always on."

8

"always on" promise, is nonsensical. For example, this "agreement" contains no payment terms, but Schwartz made regular monthly payments to Comcast. Even resolving all doubts and inferences in Schwartz's favor, it is impossible to infer that a reasonable adult in Schwartz's position would believe that his contract with Comcast consisted entirely of a single promise that the service would be "always on." Comcast offered internet service under the terms of its Subscriber Agreement, and Schwartz accepted the service, so the terms of the contract are provided by the Subscriber Agreement.

The terms of the Subscriber Agreement were available to Schwartz at all times because the Agreement was posted on Comcast's web site. Schwartz argues that the contract was too difficult to find, but the record demonstrates that the Agreement is available to all of Comcast's subscribers via its website. Under Pennsylvania law, failure to read a contract does not excuse a party from being bound by its terms. *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990) ("Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.").

It is true that in some cases, a party is excused from the terms of a contract where he never had access to the contract and thus could not make himself aware of its terms. *Quiles*, 879 A.2d at 287. However, in this case, the terms of the contract were available to Schwartz via the web site, and thus they are binding, despite the fact that he was unaware of them.

9

Comcast has demonstrated that Schwartz was aware of a subscription agreement, which included an arbitration clause. Schwartz has failed to rebut this evidence, and we conclude that as a matter of law, there was a valid agreement to arbitrate. However, when the District Court determined that there was no arbitration agreement, it did not reach the questions of whether the dispute between Schwartz and Comcast falls outside the scope of the arbitration provision and whether the Subscriber Agreement is an unconscionable contract of adhesion. As a result, these questions must now be addressed.

IV.

For the reasons set forth above, we will reverse the District Court on the question of the existence of the arbitration agreement and remand for consideration of the scope of the arbitration agreement and whether the Subscriber Agreement was an unconscionable contract of adhesion.