Mrs. Wanda Selman BRANCH, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

FIDELITY & CASUALTY CO. OF NEW YORK, Intervenor-Plaintiff-Appellee, Cross-Appellant,

v.

CHEVRON INTERNATIONAL OIL COMPANY, INC., et al., Defendants,

CHEVRON U.S.A., INC., Defendant-Third-Party Plaintiff-Appellee, Cross-Appellant,

v.

PLATFORM COATING, et al., Third-Party Defendants-Appellants Cross-Appellees.

No. 84–3050.

United States Court of Appeals, Fifth Circuit.

March 5, 1986.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert B. Deane, New Orleans, La., for Stonewall Ins.

Jacques F. Bezou, New Orleans, La., for Branch and Marlowe.

McGlinchey, Stafford, et al., John E. Galloway, New Orleans, La., for Platform Coating Services, et al.

Faris, Ellis, Cutrone & Gilmore, Mat M. Gray, III, New Orleans, La. for Frank William Baiden, Lloyd's of London, et al.

Ivan D. Warner, III, New Orleans, La., for McMurrain.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for Chevron.

René A. Curry, Jr., Kurt S. Blankenship, New Orleans, La., for Fidelity & Cas. Co.

Before CLARK, Chief Judge, POLITZ, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

This appeal arises out of an offshore oil platform accident in which Richard W. Branch, Jr. and James Danny Marlowe, two painters employed by Platform Coating Services, Inc., were killed. Their survivors sought damages from Chevron U.S.A., Inc., owner of the platform, based on allegations of negligence and strict liability. William McMurrain, a Platform Coating co-employee, brought an action for personal injuries allegedly sustained during a rescue attempt. The case was tried to a jury which returned a verdict in favor of the Branch and Marlowe plaintiffs on their negligence

and strict liability claims, but rejected McMurrain's claims. The court enforced an indemnity contract and awarded Chevron judgment against Platform Coating and its insurers. On appeal we consider the propriety of the district court's admission into evidence and its comments about the settlements which plaintiffs made with Platform Coating, the validity and application of an indemnity agreement between Chevron and Platform Coating, and issues of negligence, strict liability, and contributory negligence. For the reasons assigned, we affirm.

## BACKGROUND FACTS

Branch and Marlowe were members of a Platform Coating crew assigned to sandblast and paint one of Chevron's offshore platforms. During the early morning hours of December 11, 1978, they fell 70 feet to their deaths in the Gulf of Mexico, when a pipe handrail to which they had attached their scaffolding broke. The handrail was made of two-inch heavy steel pipe welded to the steel I-beam structures of the platform. The welds at both ends of the pipe had badly corroded and broke under the weight of the two painters and their equipment. McMurrain alleged injury to his back while trying to pull the decedents from the water and carrying one up the platform.

Mrs. Marlowe, personally and on behalf of her two minor children, and Mrs. Branch, personally and on behalf of her minor child, sued Chevron, claiming negligence in its inspection and maintenance of the platform, La.Civil Code article 2315, strict liability accountability for allowing the platform to fall into ruin, La.Civil Code article 2322, and for having custody of an unreasonably dangerous thing, La.Civil Code article 2317. McCurrain sought recovery for his personal injury.

Chevron invoked an indemnity agreement and filed a third-party action against Platform Coating and its insurers. Platform Coating denied responsibility to Chevron, contending that Chevron could not seek indemnification for its own negligence or strict liability.

The case was first tried to a jury in September of 1981, a trial which ended when the district court directed a verdict in favor of Chevron on the grounds that the handrail did not fail in its intended purpose and that Chevron was neither negligent nor strictly liable and that Branch and Marlowe were contributorily negligent. On appeal we reversed, *Branch v. Chevron Intern. Oil Co., Inc.*, 681 F.2d 426 (5th Cir.1982), finding that the district court had applied an incorrect legal standard and inappropriately had made factual choices which were within the province of the jury. That decision constitutes the law of the case on all issues disposed of therein.

Prior to trial on remand, we rendered the benchmark decision in *Hyde v. Chevron, U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983), holding, *inter alia*, that by a general indemnity agreement, one could be indemnified from losses occasioned by strict liability. Apparently concerned with its exposure if the plaintiffs recovered against Chevron on their strict liability claim and it was held liable to Chevron under the indemnity agreement, Platform Coating persuaded its insurers to settle with the plaintiffs. Pursuant to a settlement agreement, Mrs. Branch and Mrs. Marlowe, individually and on behalf of their children, each received $375,000; McMurrain received $250,000; and the compensation intervenor received $120,259.47.

The settlement agreement completely terminated Platform Coating's exposure. Should Chevron be found not liable then the matter would be concluded. Should Chevron be cast in judgment for at least as much as the settlement proceeds, but the claim for indemnification against Platform Coating be denied, the plaintiffs would return the monies received. Should Chevron be found liable and the indemnification be enforced, under the agreement the plaintiffs agreed not to execute on any judgment which would impose any further liability upon Platform Coating and its insurers.

When tried on remand, the district court admitted the settlement agreement into evidence, including the amounts paid to each plaintiff, and made extensive comments on the significance of the settlement, including the following excerpts:

Ladies and gentlement of the jury, it now seems to me to be important to tell you all a few things that I alluded to briefly when we first discussed the case.... This looks like a good time to put you in the picture.

Approximately 30 days ago the attorneys for various other parties in this lawsuit configurated a settlement proceeding or a settlement agreement....

They [the settlements] were important developments that I have decided you all should know about.

The lawyers then put together a settlement under the terms of which very significant payments were made.... Mrs. Marlowe was paid $375,000. Mrs. Branch was paid $375,000 and Mr. McMurrain was paid $250,000. Chevron was not a participant in those arrangements.

It seems to me that that significant event should be mentioned to the jury for you all to consider as you all see fit in determining the ultimate factual issue of Chevron's involvement, if any. I don't want you to either over or under respond to the fact that those settlements as between the people I have mentioned when you come to determine whether Chevron has any responsibility whatsoever in this case, or if it does, what the amount of its responsibility is.

I insisted that this information be made available to you all in the course of the trial ... Why? Well, frankly because I think that a jury should know everything that is going on in this case.

I'm going to tell you all that the fact of that settlement is something that you all must measure in determining at the proper time what, if any involvement

there is either as far as Chevron is concerned.

I'm not going to permit that very significant bit of information to be shielded from you.

You may conclude that they [the settlements] are significant in your ultimate decision about who gets anything notwithstanding this settlement, how much it may be.

One of the significant evidentiary aspects of this case is that you all know about [the settlements].

Responding to special interrogatories, the jury returned a verdict against Chevron in favor of Mrs. Branch and her child in the amount of $375,000, and in favor of Mrs. Marlowe and her two children for $450,000. McMurrain's demands were rejected. The jury's findings included: Platform Coating was free of negligence; the platform was not in a state of ruin; Chevron was negligent; the pipe handrail was in a defective condition which caused the deaths; and although the decedents were negligent, their negligence was not a substantial cause of the accident. The district court entered judgment on the verdicts and then awarded Chevron a judgment of indemnification against Platform Coating. All parties appeal.

## ANALYSIS

The accident occurred on a fixed platform on the outer continental shelf, off the coast of Louisiana. Under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*, this dispute is to be resolved by resort to the substantive law of Louisiana which becomes surrogate federal law. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Plaintiffs invoked three different tort concepts under Louisiana law, contending that Chevron was accountable for: (1) negligence in the maintenance and inspection of the platform, Civil Code article 2315;[1] (2) strict liability for permitting its

---

**1.** The first sentence of Civil Code article 2315, the keystone of Louisiana tort law, provides succinctly: "Every Act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

platform to fall into a state of ruin, Civil Code article 2322;[2] and (3) strict liability for injury caused by a thing in its custody, specifically the defective platform handrail, Civil Code article 2317.[3]

Article 2317 imposes strict liability on the owner or custodian of a thing which poses an unreasonable risk of injury to another. *Loescher v. Parr*, 324 So.2d 441 (La.1975); *Rodrigue v. Dixielyn Corp.*, 620 F.2d 537 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Article 2322 imposes strict liability on the owner of a building which has fallen into ruin as a consequence of a vice in original construction or because of a lack of appropriate repair. *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1978). Both strict liability claims require the plaintiffs to prove that the fixed platform was unreasonably dangerous for normal or foreseeable use because of a defective condition. *Weber v. Fidelity & Casualty Ins. Co.*, 259 La. 599, 250 So.2d 754 (1971); *Cobb v. Insured Lloyd's*, 387 So.2d 13 (La.App.1980); *Byrd v. Hunt Tool Shipyards*, 650 F.2d 44 (5th Cir.1981). Strict liability claims do not require proof of negligence.

As noted, the jury found that Chevron was negligent, its platform was not in a state of ruin, but its handrail was in a defective condition and caused the injuries. As we perceive the jury's answers to the interrogatories, Chevron was found liable because of its negligence, Civil Code article 2315, and because of the strict liability imposed by Civil Code article 2317.

### STRICT LIABILITY AND NEGLIGENCE

The essence of the strict liability claim is that the handrail to which the decedents attached their scaffolding was unreasonably dangerous in normal use. The essence of the negligence claim is that this

condition resulted from failure of inspection and repair. The rail was made of two-inch pipe and was welded to the platform. Expert testimony opined that uncorroded welds could have borne upwards of 17 tons of weight. The subject welds were badly corroded; at one end there was only 2–4% of the weld metal remaining, and at the other end there was at most a third of the weld in some areas and very little in others. As a consequence, the welds failed under the weight of two men, scaffolding, and equipment, a combined weight of less than 800 pounds.

■ The evidence reflects that Chevron had never inspected the subject pipe or welds during the six years prior to the accident, although corrosion was a known fact of life on metal structures in the gulf. In fact, we find nothing to indicate that there had been any inspection or repairs to the handrail in question at any time after the platform was constructed in 1966. The record also contains evidence upon which the jury could conclude that using the railing in question to support scaffolding for sandblasting and painting was a foreseeable use. There is adequate evidence to support the jury's findings that Chevron was negligent in its inspection and maintenance of the platform and that its handrail was unreasonably dangerous for normal use. *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc), mandates an affirmance of the jury's findings.

Likewise, there is sufficient evidence to support the jury's finding that although Branch and Marlowe were negligent, their negligence was not a substantial cause of the accident. There was evidence, which the jury was free to accept, that the handrail was used to secure scaffolding and that this practice was not uncommon; that the corrosion of the welds was not apparent to Branch and Marlowe; and that their failure to use harnesses or safety netting,

---

**2.** Civil Code article 2322 provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by negligent to repair it, or when it is the result of a vice in its original construction.

**3.** Civil Code article 2317 provides in pertinent part:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... things which we have in our custody.

under the circumstances obtaining on this platform where they were working, did not constitute recovery-barring negligence.

## THE SETTLEMENT AGREEMENT

The district court not only permitted, it apparently required the filing of the settlement agreement, and commented extensively thereon. Chevron's counsel cross-examined, using the settlement data, and made pointed reference to the settlement during closing argument. This was error.

██ Rule 408 of the Federal Rules of Evidence provides that evidence of a compromise "is not admissible to prove liability for or invalidity of the claim or its amount." Whether to permit the evidence for another purpose is within the discretion of the trial court. *Belton v. Fibreboard Corp.,* 724 F.2d 500 (5th Cir.1984). It is manifest from the comments by the court, excerpted above, that the evidence was admitted for the jury's consideration in determining liability and the quantum of damages. Admission for that purpose was error.

██ Voluntary settlements are favored for they obviate the need for costly and time-consuming litigation. *Miller v. Republic National Life Ins. Co.,* 559 F.2d 426 (5th Cir.1977). In multiparty maritime litigation, settlements "should be even more encouraged." *Cates v. United States,* 451 F.2d 411, 416 (5th Cir.1971). The spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent. The admission of the settlement agreement into evidence, and the use made of that evidence, violated both the letter and spirit of Rule 408.[4] *See McInnis v. A.M.F., Inc.,* 765 F.2d 240 (1st Cir.1985); *McHann v. Firestone Tire & Rubber Co.,* 713 F.2d 161 (5th Cir.1983). This would constitute reversible error, except for the particular posture of the claims of the plaintiffs in light of our disposition of the indemnity issue, viewed against the backdrop of the contents of the settlement agreement.

---

**4.** The same result would be reached under Louisiana law respecting settlements which makes the mere mention of a settlement to the jury an

## INDEMNITY AGREEMENT

The contract between Chevron and Platform Coating contained the following indemnity agreement:

Contractor [Platform Coating] agrees to defend and hold Company [Chevron] indemnified and harmless from and against any loss, expense, claim or demand for:

(a) Injury to or death of Contractor's employees or for damage to or loss of contractor's property in any way arising out of or connected with the performance by the contractor of services hereunder.

██ This court is no stranger to this indemnity provision. *See e.g., Hyde v. Chevron, U.S.A., Inc.,* 697 F.2d 614 (5th Cir.1983); *Wiley v. Offshore Painting Contractors, Inc.,* 711 F.2d 602 (5th Cir. 1983); *Sullen v. Missouri Pacific Railroad Co.,* 750 F.2d 428 (5th Cir.1985); and *Knapp v. Chevron USA, Inc.,* 781 F.2d 1123 (5th Cir.1986). These cases establish beyond peradventure the scope, reach, and limitations of this indemnity agreement. It does not insulate Chevron from the effects or consequences of its own negligence. To secure indemnification from one's own negligence we have repeatedly held that the intent of the parties must be expressly and specifically manifested. *Hyde; Wiley; Sullen; Knapp.* But on the date of the accident at bar, the indemnity agreement did cover claims against Chevron based on its responsibilities under Louisiana's strict liability regimes. This includes strict liability claims under Civil Code articles 2317 and 2322. *See Hyde; Knapp; Rodriguez v. Olin Corp.,* 780 F.2d 491 (5th Cir.1986).

·To the extent Chevron seeks indemnification for claims based on allegations of its negligence, its demands are rejected. To the extent Chevron demands that Platform Coating pay the claims of the complainants based on allegations and proof of its strict liability, those demands, as of December 11, 1978, the date of the tragic accident in which Messrs. Branch and Marlowe died, were appropriate. The subsequent adop-

---

error. *See Parker v. South Louisiana Contractors,* 370 So.2d 1310 (La.App.1979), and cases cited therein.

tion by the Louisiana Legislature of the Oilfield Indemnity Act of 1981, La.R.S. 9:2780, which proscribes indemnity agreements involving both negligence and strict liability, has no application in this case. *Knapp.* We look only to the law as it existed on the date of the accident. On that date, an indemnity agreement such as that now before the court could transfer the strict liability of the indemnitee.[5] That transfer is no longer permitted in situations subject to the Louisiana Oilfield Indemnity Act of 1981.

The indemnity claim was reserved to the court. The trial judge granted Chevron indemnity for the full amount of the awards to the Branch and Marlowe plaintiffs. We affirm the ruling that indemnification is in order but vacate and remand for a corrected judgment.[6] That affirmation, together with our upholding of the jury's verdict on the strict liability issue, and the obligations undertaken by the plaintiffs in the settlement agreement, lead to the conclusion that we should not reverse and remand for a new trial because of the error involving the settlement agreement. In the particular setting of this case, that error was not prejudicial to the plaintiffs.

The settlement agreement commits the Branch and Marlowe plaintiffs, McMurrain, and the compensation intervenor to take no steps to execute any judgment against Chevron which might lead to further exposure of Platform Coating and its insurers. Specifically, the agreement provides:

> It is the intent of this agreement that third-party defendants [Platform Coating and its insurers] will have no further liabilities of any kind to any party as a result of the subject matter of the above

three civil actions [the Branch, Marlowe and McMurrain suits]. Accordingly, Branch, Marlowe, McMurrain, and Fidelity [the compensation carrier-intervenor] hereby agree not to execute on any judgments in their favor and against Chevron or any other party to the extent that execution on the judgment will expose third-party defendants to any further liability.

A reversal and remand for a new trial would accomplish naught for any of the plaintiffs, including a reversal for McMurrain on the basis of an error in the application of Louisiana law on the rescue doctrine, which we need not discuss. If this matter were remanded and a verdict were rendered against Chevron in favor of any plaintiff, in an amount in excess of that received by that plaintiff in the settlement with Platform Coating, under the settlement agreement any such judgment could not be enforced against Chevron. Accordingly, the plaintiffs suffered no actual prejudice by the introduction of the evidence of the settlement. Similarly, McMurrain suffered no prejudice by the asserted erroneous application of the rescue doctrine. There being no prejudice possible in the practical order, the error must be characterized as harmless. It may not serve as the basis for a reversal.

We find no merit in any other issue raised by any appellant or cross-appellant.

## CONCLUSION

The jury's findings that the fixed platform was not in a state of ruin, that the pipe handrail was in a defective condition and caused the accident, that Chevron was negligent, that Platform Coating was not negligent, and that Branch and Marlowe

---

**5.** As footnoted in *Knapp,* we are cognizant of the decision now pending before the Louisiana Supreme Court in *Sovereign Ins. Co. v. Texas Pipeline Co.,* which will decide whether strict liability must be expressly included in indemnity agreements. We opt to follow this court's decision in *Hyde, Rodriguez, and Knapp,* holding that express inclusion is not required; general language of indemnity suffices.

**6.** The court granted Chevron indemnification for $825,000, the total of the Branch and Mar-

lowe judgments. Mrs. Marlowe was awarded $450,000 by the jury. Under the terms of the settlement agreement, quoted *infra* in text, she may not recover from Chevron more than $375,000, otherwise she would be executing on a judgment which would expose Platform Coating to further payment. The judgment of indemnification must be tailored to reflect the limitations imposed on the plaintiffs by the settlement agreement.

were negligent but that their negligence was not a substantial cause of the accident, are all supported by sufficient evidence and are affirmed.

The trial court's finding and conclusion that the indemnity agreement between Chevron and Platform Coating was enforceable is affirmed insofar as it relates to Platform Coating's assumption of responsibility for the consequences of Chevron's strict liability exposure.

The trial court erred by permitting evidence of the settlement agreement between the plaintiffs, Platform Coating and its insurers, and the compensation carrier-intervenor, and further erred in its comments about the settlement. There was perhaps error in the application of Louisiana's rescue doctrine. But under the particular circumstances of this case, any such errors must be characterized as harmless and not grounds for reversal.

For these reasons, we AFFIRM the verdicts and judgments except that we VACATE the judgment granting Chevron indemnification and REMAND for re-entry consistent herewith.