**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2011

No. 10-20417

Lyle W. Cayce
Clerk

ONE BEACON INSURANCE COMPANY

Plaintiff – Cross Appellee

v.

CROWLEY MARINE SERVICES, INC.,

Defendant-Third Party Plaintiff – Appellee Cross-Appellant

v.

TUBAL-CAIN MARINE SERVICES, INC.,

Third Party Defendant – Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before KING, WIENER, and CLEMENT, Circuit Judges.

KING, Circuit Judge:

This suit arises out of a dispute between a ship repair contractor, barge owner, and insurance company over the terms of a ship repair service contract and a maritime insurance policy. The contractor appeals from the district court's ruling that the contractor breached its contractual obligation to procure insurance coverage for the barge owner and that it was contractually obligated to defend and indemnify the barge owner against damages ensuing from a workplace injury that occurred while the barge was being repaired. The barge

No. 10-20417

owner cross-appeals from the district court's ruling that it was not entitled to additional insured coverage under the contractor's insurance policy. We affirm the judgment of the district court in all respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Crowley Marine Services, Inc. ("Crowley") owns and operates a large fleet of vessels, including tugs, tankers, and specialty offshore work barges. Tubal-Cain Marine Services, Inc. ("Tubal-Cain") performs ship repair work at its fabrication and dry dock facility in Port Arthur, Texas. In March 2007, Crowley hired Tubal-Cain to perform work on one of Crowley's vessels, the MWB 403 Barge. Tubal-Cain in turn hired Rio Marine, Inc. as a subcontractor to perform lighting and electrical work on the barge. On or about April 23, 2007, Marcus Parker, an employee of Rio Marine, allegedly sustained severe and disabling injuries caused by an electrical shock and a resulting fall that he suffered while performing repairs to the barge. Parker filed suit against Tubal-Cain and Crowley in Texas state court, alleging that their negligence caused his injuries.

Crowley subsequently made a formal demand for defense and indemnity from Tubal-Cain for any liability or expense incurred as a result of Parker's suit, and sought defense and coverage from One Beacon Insurance Company ("One Beacon") as an additional insured under the Maritime Comprehensive Liability Policy that One Beacon issued to Tubal-Cain (the "Policy"). One Beacon denied coverage for Crowley and subsequently filed a declaratory judgment action in the District Court for the Southern District of Texas—the action giving rise to this appeal—seeking a declaration that Crowley was not entitled to coverage as an additional insured under the Policy. In its complaint, One Beacon asserted that it never received a request from Tubal-Cain to add Crowley as an additional insured on the Policy, and that there was no "insured contract" between Tubal-Cain and Crowley that would entitle Crowley to coverage under the Policy's terms.

No. 10-20417

Crowley filed a third-party complaint against Tubal-Cain in the declaratory judgment action.  Crowley alleged that the terms and conditions referred to in the repair service order ("RSO") which Crowley issued in connection with the repair work for the barge required Tubal-Cain to defend and indemnify Crowley against any claim brought by Tubal-Cain employees and contractors against Crowley relating to the work performed under the RSO. Crowley also alleged that the terms and conditions required Tubal-Cain to carry various insurance policies naming Crowley as an additional insured.  In the alternative, Crowley asserted a claim against Tubal-Cain for fraud and negligent misrepresentation, alleging that Tubal-Cain falsely led Crowley to believe that it had obtained the requested insurance coverage.

The parties agreed to try the case to the district court by written submission.  The district court found in favor of Crowley on its claim against Tubal-Cain for contractual defense and indemnity and its claim that Tubal-Cain breached its contractual obligation to obtain insurance coverage.[1]  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, No. H-08-2059, 2010 WL 1463451, at *14 (S.D. Tex. Apr. 12, 2010).  The district court further held that Crowley did not qualify as an additional insured under Tubal-Cain's policy and entered judgment in favor of One Beacon on its declaratory judgment claim.  *Id.*  Tubal-Cain appeals from the judgment, and Crowley cross-appeals.

## II.  DISCUSSION

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."  *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006) (citation and internal quotation marks omitted). A factual finding is "clearly erroneous" when " 'although there is evidence to support it, the reviewing court on the

---

[1] The district court also dismissed with prejudice Crowley's fraud and negligent misrepresentation claims.  Crowley does not challenge this ruling on appeal.

3

entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## A.　　The Contract Between Crowley and Tubal-Cain

Crowley and Tubal-Cain do not dispute that they reached an agreement for repair services for Crowley's barge; instead, they dispute whether they had a written agreement obligating Tubal-Cain to defend, indemnify, and obtain insurance for Crowley.

The existence of a maritime contract involves questions of fact. *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 458–59 (5th Cir. 1995). The interpretation of contract terms is a matter of law that we review *de novo. Id.* at 459. A contract for the repair of a vessel is a maritime contract, governed by general maritime law. *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 412 (5th Cir. 1982). General maritime law "stems from the maritime jurisprudence of the federal courts," and is "an amalgam of traditional common law rules, modifications of those rules, and newly created rules" drawn from state and federal sources. 1 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 5-1 (4th ed. 2004) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)); *cf. Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986) (applying general principles of contract law as adopted by general maritime law, rather than state law, to the interpretation of maritime contracts).

Except where noted, the district court's factual findings pertaining to the parties' agreement for repairs to the barge are not in dispute on appeal. In March 2007, Crowley Port Engineer Ricky Bastian met with John Durio, Tubal-Cain's Production Superintendent, and Eddie Van Huis, Tubal-Cain's President, to discuss repair work to the barge. The repair work commenced soon thereafter. Crowley had previously contracted with Tubal-Cain eight times in

No. 10-20417

the preceding year for minor work to other Crowley vessels, and Crowley contracted with Tubal-Cain for fifteen additional jobs following the job at issue here.

For each of these projects, Crowley issued an RSO to Tubal-Cain. Each RSO outlined the contemplated scope of the repairs and assigned a project number to the repair job, but contained no pricing terms and was not signed by either party. Following the March 2007 meeting, and in conformity with its standard practice, Crowley issued and mailed to Tubal-Cain an RSO, number 9501229, dated April 2, 2010. The RSO at issue in this case, as well as each RSO that Crowley issued to Tubal-Cain in connection with the prior and subsequent repair service jobs, contained the following notice prominently displayed on the first page:

> THIS IS A CONFIRMATION. DO NOT DUPLICATE.
>
> THIS RSO IS ISSUED IN ACCORDANCE WITH THE PURCHASE ORDER TERMS & CONDITIONS ON WWW.CROWLEY.COM / DOCUMENTS & FORMS, UNLESS OTHERWISE AGREED TO IN WRITING.
>
> THE ABOVE REPAIR SERVICE ORDER (RSO) NUMBER MUST APPEAR ON ALL BILLING INVOICES. FAILURE TO COMPLY WILL RESULT IN INVOICES BEING RETURNED.

The terms and conditions referred to in the RSO were located on a subpage of Crowley's website. The terms and conditions could not be accessed by typing "www.crowley.com / documents & forms" into a web browser. The district court found that "www.crowley.com / documents & forms" was not intended to be a web address indicating the exact location of the page containing the terms and conditions, but merely provided directions to assist in locating the terms and conditions on Crowley's website. To access the terms and conditions, a contractor would have had to take the following steps: (1) go to Crowley's home page, "http://www.crowley.com"; (2) click on a link on the menu bar titled

"Documents & Forms"; (3) select "Vendor Relations" from a drop-down menu; and (4) select "Purchase Order Terms and Conditions." The terms and conditions were displayed in approximately four-point font. Based on testimony by Daniel Mock, the Crowley employee responsible for placing the terms and conditions on Crowley's website, the district court found that neither the location nor the content of Crowley's terms and conditions changed during the course of Crowley's working relationship with Tubal-Cain.[2]

Crowley's terms and conditions require contractors to defend and indemnify Crowley for any claim that may be brought against Crowley

> arising out of any injury (including death) or damage to any persons or property in any manner, caused or occasioned by any defect in the goods or services or any act, omission, fault, negligence or default of any person, firm, corporation or other entity . . . even if the same be, or is alleged to be, due to the sole active negligence of [Crowley] or anyone acting on its behalf.

Further, the terms and conditions mandate that contractors procure, at their own expense, certain insurance policies including a commercial general liability policy with limits of not less than $1 million for any one occurrence, with no watercraft exclusion, and covering the work being conducted in accordance with the RSO. The insurance policy was to be endorsed to name Crowley, "as [an] additional insured[] and . . . endorsed to waive all rights of subrogation against Crowley an[d] the Property," in this case, Crowley's barge.

The parties do not dispute that Crowley did not specifically discuss the terms and conditions with Tubal-Cain and did not furnish to Tubal-Cain a hard copy of the indemnity or insurance requirements set forth in the terms and conditions. Tubal-Cain's President, Eddie Van Huis, who received and reviewed the RSO, testified that he never visited Crowley's website nor investigated the RSO's reference to the online terms and conditions, believing that it was

---

[2] Crowley has since redesigned its website.

unnecessary to do so. Van Huis testified that, typically, when a contract came in, he would review it with, among other professionals, Tubal-Cain's CPA and corporate attorney. He did not follow this procedure with Crowley's RSOs because he believed that they were merely confirmations of the parties' oral agreements, and not contracts in and of themselves.

At the conclusion of its work on the barge, and in accordance with his routine practice, Van Huis prepared an invoice for the repair work on Crowley's barge. The invoice, which included the project number on Crowley's RSO, provided that Tubal-Cain "reserves the right to review any and all purchase orders prior to their acceptance." The district court found that every invoice that Tubal-Cain submitted to Crowley contained this reservations of rights. At no time in connection with the repair job to Crowley's barge or any prior or subsequent repair jobs did Tubal-Cain object to any of Crowley's terms and conditions. The invoice for the work on Crowley's barge was issued to Crowley, where it was approved, signed by Crowley's port engineer, and paid.

The district court concluded that the March 2007 oral agreement, Crowley's RSO, and Tubal-Cain's subsequent invoice together constituted one written contract between Tubal-Cain and Crowley for the repair service job in question. The district court found that the RSOs that Crowley had issued to Tubal-Cain for this and all prior repair service jobs contained identical notice provisions that "plainly and conspicuously" incorporated the terms and conditions on Crowley's website. The district court further found that the parties established a course of dealing from which the court could infer that those terms and conditions were implied in every contract. The district court held that by accepting the RSO and issuing an invoice for payment without exercising its right to object to the terms and conditions, Tubal-Cain ratified their course of dealing and assented to these terms. Furthermore, although the terms were on a subpage of Crowley's website and in the equivalent of four-point

font, the district court held that the terms were "sufficiently legible and accessible" that enforcement of the online terms was not unconscionable. Accordingly, the district court concluded that Tubal-Cain was bound by Crowley's terms and conditions and therefore required to defend and indemnify Crowley for claims arising out of the work specified in the RSO and to procure insurance coverage for Crowley.

### 1.    *Course of dealing*

On appeal, Tubal-Cain argues that the parties entered into a binding oral agreement regarding the scope and price of the repair work in March 2007, and that Crowley's subsequently-issued RSO was merely a confirmation of that oral agreement.  Because the oral agreement was silent with regard to defense, indemnity, and insurance requirements, Tubal-Cain contends that the RSO did not and could not confirm more than what the parties orally agreed to.  Further, Tubal-Cain asserts that the RSO was sent to Tubal-Cain after work began on the barge, and therefore Tubal-Cain had no opportunity to review and assent to the terms prior to beginning performance.

"[O]ral contracts are generally regarded as valid by maritime law." *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961); *see also Fuesting v. Lafayette Parish Bayou Vermilion Dist.*, 470 F.3d 576, 580 (5th Cir. 2006) ("Oral contracts . . . are valid in admiralty.").  Under general maritime law, terms and conditions contained in subsequently-issued  purchase orders may supplement an oral agreement if there is evidence of a prior course of dealing between the parties from which a court may infer that the parties were aware of and consented to those additional contractual terms.  *See Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1120 (5th Cir. 1992), *superseded by statute on other grounds*; *see also* Restatement (Second) of Contracts § 223(1) (1981) (defining "course of dealing" as "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of

understanding for interpreting their expressions and other conduct"); *id.* at
§ 223(2) ("Unless otherwise agreed, a course of dealing between the parties gives
meaning to or supplements or qualifies their agreement."). In construing
maritime contracts, we have held that "[w]here parties share a history of
business dealings and standardized provisions have become part of those
dealings, such familiar provisions within purchase orders issued after
performance are binding where they are accepted without objection." *Campbell*,
979 F.2d at 1120.

This principle has been applied in the context of the ship repair industry,
where it is "not unusual" for parties to enter into an oral agreement for repair
work, and for the ship repair contractor to send a purchase order or invoice
containing terms and conditions after the repair work has begun or is completed.
*B & B Schiffahrts GmbH & Co. v. Am. Diesel & Ship Repairs, Inc.*, 136 F. Supp.
2d 590, 592, 594–95 (E.D. La. 2001); *see also M/V Am. Queen v. San Diego
Marine Constr. Co.*, 708 F.2d 1483, 1489 (9th Cir. 1983) ("In giving effect to
exculpatory clauses, courts have recognized that it is a practice in the ship repair
industry to do repair work before sending an invoice containing the contract for
repairs."); *Hudson Waterways Corp. v. Coastal Marine Serv., Inc.*, 436 F. Supp.
597, 604 (E.D. Tex. 1977) ("[T]he custom in ship repair industry is to first do the
repair work, and then send out the invoice which contains on it the contract.").

For instance, in *Hudson Waterways Corp.*, the District Court for the
Eastern District of Texas concluded that limitation of liability terms contained
in a ship repair contract were binding despite the fact that "the written
document which constitute[d] the contract for repair was not sent to the Plaintiff
until some time after the repair work was completed." 436 F. Supp. at 604. The
court noted:

> Between 1970 and 1975, the Defendant did 102 separate repair jobs
> for the Plaintiff. For each of these jobs, the invoice and contract

> were sent to the Plaintiff after the work was completed, and it contained the . . . clause which the Plaintiff now contends is void. The Court believes this is sufficient to put the Plaintiff on full notice that this clause was implied in every repair contract.

*Id.* at 604–05; *see also Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582–83 (5th Cir. 1986) (party had notice that ship repair contract contained a limitation of liability clause where the clause appeared in previous repair contracts and party never repudiated the clause nor instructed its agents not to sign contracts in the future containing the clause); *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 54–55 (5th Cir. 1967) (limitation of liability clause contained in ship repair contractor's invoice, sent after repair work was completed, was binding on ship owner who admitted that it was aware of the clause from prior invoices received from the contractor and that such clauses were standard in the industry).

Tubal-Cain disputes the district court's findings that the RSO's terms and conditions constituted part of a written agreement between the parties as a result of their course of dealing with respect to the RSO process, and that Tubal-Cain ratified their course of dealing by submitting an invoice for the work on the barge without objecting to the terms and conditions. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) ("An inference of the parties' common knowledge or understanding that is based upon a prior course of dealings is [a] question of fact."). Tubal-Cain claims that the prior working history between the parties does not support an inference that they intended the terms and conditions referred to in the RSO to be implied in every contract, noting that there had been only eight jobs for minor repair work to Crowley's vessels prior to the contract for repairs to the barge, and those jobs were completed within only six months of the job in question. However, courts have found a course of dealing between parties to a maritime contract based on a party's receipt of as few as three or four bills of lading containing the same

10

limitation of liability terms, *see Royal Ins. Co. v. Sea-Land Serv. Inc.*, 50 F.3d 723, 727 (9th Cir. 1995), and upon a party's approval of only nine invoices containing identical limitation of liability clauses, *see Lykes Bros. S.S. Co. v. Waukesha Bearings Corp.*, 502 F. Supp. 1163, 1172–73 (E.D. La. 1980). Thus, the parties' relatively brief relationship prior to the repair job to the barge is not, without more, a basis for finding that the district court erred.

> 2. *Incorporation by reference of Crowley's online terms and conditions*

Tubal-Cain next disputes the district court's finding that the RSO was sufficient to put Tubal-Cain on notice of Crowley's insurance and indemnity terms. Tubal-Cain contends that, because it lacked notice of those terms, the district court erred in concluding that Tubal-Cain was aware of and assented to them. Regarding the indemnity term in particular, Tubal-Cain correctly states that indemnity terms which, like the one at issue here, purport to indemnify a party for damages caused by its own negligence, must be "specific and *conspicuous*" to be enforceable under maritime law. *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1153 (5th Cir. 1990) (quoting Restatement (Second) of Contracts § 195 cmt. b (1981)); *see also Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986) ("Long-established general principles of interpreting indemnity agreements [in maritime contracts] require that indemnification for an indemnitee's own negligence be clearly and unequivocally expressed." (citation and internal quotation marks omitted)).

Tubal-Cain argues that the language of the RSO itself did not provide any notice to Tubal-Cain that it would be required to indemnify or procure insurance coverage for Crowley, much less provide "specific and conspicuous" notice as required to render the indemnity term enforceable. Tubal-Cain contends that our decision *Orduna S.A. v. Zen-Noh Grain Corp.* is controlling on this point. In *Orduna*, Zen-Noh sought to enforce an indemnity clause incorporated by reference into a berth application against Orduna, a ship owner whose vessel was

damaged during an accident involving a grain elevator owned by Zen-Noh. Orduna's agent had signed the berth application, certifying that Orduna was "in compliance with and subject to all applicable tariffs, rules, and regulations of Zen-Noh Grain Corporation, The South Louisiana Port Commission, and the Federal Grain Inspection Service, copies of which have been received and read." 913 F.2d at 1153 & n.3. The relevant indemnity clause was contained in a dock tariff. *Id.* at 1153.

On appeal, we noted that "[b]efore enforcing an indemnification clause for an indemnitee's own negligence, a court must be firmly convinced that the exculpatory provision reflects the intention of the parties." *Id.* We upheld the district court's finding that Orduna never received nor consented to the indemnity clause because "[n]o excerpts of the pertinent texts of the[] documents [containing Zen-Noh's terms and conditions] or even a list of the documents appeared on the berth application;" "the berth application did not identify by either date or number the specific dock tariff that purported to exculpate Zen-Noh from its own negligence;" and Orduna had never received a copy of the relevant dock tariff when applying for the berth. *Id.* at 1153-54. We therefore affirmed the district court's holding that the indemnity clause was unenforceable.

Tubal-Cain notes that—like Zen-Noh in *Orduna*—Crowley did not furnish the relevant provisions in hard copy, and they were not contained in the text of the RSO itself; thus, Tubal-Cain contends that it never received or consented to the terms and conditions. Tubal-Cain observes that in *Campbell*, where we enforced certain indemnity and insurance provisions referred to in a purchase order, the relevant provisions were expressly included on the reverse of the purchase order itself. *Campbell*, 979 F.2d at 1118. Tubal-Cain argues that here, in contrast, the terms and conditions were "hidden" on Crowley's website in four-point font and, like the reference to the dock tariff in the berth application in *Orduna*, the reference to the terms and conditions on the RSO failed effectively

No. 10-20417

to identify the location of the indemnity and insurance provisions on Crowley's website. Accordingly, Tubal-Cain contends that it lacked reasonably conspicuous notice of the terms, and we therefore cannot infer that Tubal-Cain intended to be bound by them.

Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together. *See* 11 Williston on Contracts § 30:25 (4th ed. 1999) (hereafter "Williston") ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument."). The incorporation by reference doctrine applies to maritime contracts as well. *See, e.g., New Moon Shipping Co.*, 121 F.3d at 30; *Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 F. App'x 278, 281–82 (5th Cir. 2008) (per curiam) (rejecting an argument that an indemnity clause that was incorporated by reference into a berth application was not enforceable because the provision was not included in the text of the berth application itself). Under both general contract principles and admiralty law, a separate document will become part of the contract where the contract makes "clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." 11 Williston at § 30:25; *see also New Moon Shipping Co.*, 121 F.3d at 30. Terms incorporated by reference will be valid so long as it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 Williston at § 30:25. Notice of incorporated terms is reasonable where, under the particular facts of the case, "[a] reasonably prudent person should have seen" them. *Coastal Iron Works*, 783 F.2d at 582.

We see no reason to deviate from these principles where, as here, the terms to be incorporated are contained on a party's website. We note that contracts

13

formed in whole or in part over the internet present relatively new considerations for the courts, and will continue to challenge the courts as the internet plays an increasingly important role in commerce.  However, "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002) (traditional contract principles applicable to "the world of paper transactions" regarding the enforceability of contract terms against a party on notice of the existence of those terms "apply equally to the emergent world" of online contracting); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (applying "traditional principles of contract law" to determine enforceability of terms and conditions governing a "clickwrap" agreement); *Barnett v. Network Solutions, Inc.*, 38 S.W. 3d 200, 204 (Tex. Ct. App.—Eastland 2001, pet. denied) (holding that a party with notice of and opportunity to review contract terms is bound by those terms even where party has not read them, and "[t]he same rule applies to contracts which appear in an electronic format").

We note that other courts, applying traditional contract principles in the non-admiralty context, have expressly or implicitly rejected the very argument that Tubal-Cain makes here, recognizing, for instance, that "internet provisions clearly incorporated by reference [into a purchase order], readily available on the identified internet site, and plainly and clearly set forth therein," are binding even where the party has not read them.  *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008); *see also Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (a customer on notice of contract terms available on the internet website is bound by those terms); *Spartech CMD, LLC v. Int'l Auto. Components Grp. N. Am., Inc.*, No. 08-13234, 2009 WL 440905, at *5 (E.D. Mich. Feb. 23, 2009) (rejecting argument that arbitration clause was invalid because it was contained in terms

and conditions that party never received, where terms and conditions were contained on party's website and incorporated by reference into a purchase order); *cf. Oceanconnect.com, Inc. v. Chemoil Corp.*, No. H-07-1053, 2008 WL 194360, at *2–5 (S.D. Tex. Jan. 23, 2008) (arbitration clause enforceable under Texas law and UCC where terms and conditions were incorporated by reference in party's order confirmation and available for review on party's website, and where there was a course of dealing between the parties). We are persuaded that under admiralty law—which generally follows the common law of contracts in resolving maritime contract disputes—maritime contracts may validly incorporate terms from a website in the same manner that they may incorporate by reference terms from paper documents, and therefore reject Tubal-Cain's argument that the terms and conditions at issue here are unenforceable solely because they were never set down and delivered in paper format.

The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms. *See, e.g., Feldman*, 513 F. Supp. 2d at 236–37. We can imagine situations involving online terms and conditions where, analogous to *Orduna*, the terms and conditions were not unambiguously incorporated into the parties' agreement or where there was insufficient notice of the location of the terms and conditions such that a reasonable person would not be expected to find them. *See, e.g., Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 989–95 (N.D. Ill. 2008) (arbitration clause unenforceable where consumer had no reason to know that the terms and conditions containing the clause could be found on vendor's website, the terms and conditions could be found only by using the website's search bar, and the version of the terms and conditions available on the website was out of date). Under the facts of this case, however, we agree with the district court that Crowley's online terms and

conditions were clearly incorporated into the RSO and that Tubal-Cain had adequate notice of and opportunity to review them.

Here, Crowley's intent to incorporate the terms and conditions is clear from the explicit incorporating language prominently placed on the face of the RSO in all capital letters.  And, unlike in *Orduna*, the RSO clearly referred to a particular document—Crowley's website—containing these terms and conditions. And in this case, unlike in *Orduna*, Tubal-Cain had access to the terms and conditions, which were at all times available to Tubal-Cain on Crowley's website. It is undisputed that neither the content nor the location of the terms and conditions changed during the relevant time period.  The district court found that Crowley's website was easily navigated, and that a reasonable person would have been able to find the terms and conditions, findings that Tubal-Cain does not adequately challenge.  Further, the district court found that Van Huis, whose duties at Tubal-Cain included reviewing the RSOs, was "internet savvy." Moreover, Van Huis testified that he understood the notice provision on the RSO and admitted that he could have accessed the terms and conditions on the website at any time.  Finally, the district court did not clearly err in concluding that both parties were commercial entities with sophisticated procedures in place for reviewing contracts, even if Tubal-Cain did not implement those procedures in this case. Consistent with these findings, the district court found that Van Huis had actual notice of and access to the terms and conditions, even if he believed that he did not have to read them.

Although Crowley undoubtedly could have provided clearer directions to the location of the terms and conditions on the website, we agree with the district court that notice of the terms and conditions was reasonable under the particular facts of this case. *Cf. Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 224 (1st Cir. 1992) (in deciding whether maritime passenger ticket provided sufficient notice of incorporated terms and conditions, "the standard is

one of reasonableness, not perfection" (citation and internal quotation marks omitted)). We therefore find no reason to disturb the district court's holding that the terms and conditions were effectively incorporated into the RSO.

We also agree with the district court that the indemnity term in particular was sufficiently clear and conspicuous to be enforceable. It is not disputed that the text of the indemnity provision itself "expressly and specifically manifested" an intent to indemnify Crowley from the consequences of its own negligence. *Branch v. Fid. & Cas. Co. of N.Y.*, 783 F.2d 1289, 1294 (5th Cir. 1986). And whereas in *Orduna* we found a similar indemnity provision to be unenforceable because we were not "firmly convinced that the exculpatory provision reflect[ed] the intention of the parties" because notice of the provision was not "specific and conspicuous," *Orduna S.A.*, 913 F.2d at 1153, *Orduna* is distinguishable from the facts here. The indemnity term in *Orduna* was deemed unenforceable because the berth application that comprised the contract between the parties did not make clear that it was subject to terms and conditions contained in the separate dock tariff, it further failed to identify the particular dock tariff that contained those terms and conditions, and the dock tariff was never made available to the party to be bound. As discussed above, these problems are not present in this case. Nor does Crowley's use of a small font "call into question the non-drafting party's consent" under these circumstances. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006). The font size could be enlarged on a computer screen, and the paragraph containing the indemnity provision was clearly labeled in bold text.

We hold that the district court did not err in concluding that the RSO terms and conditions supplemented the oral agreement between the parties because notice of the terms and conditions was clearly and conspicuously displayed in every RSO that Crowley sent to Tubal-Cain, the terms and conditions were at all times reasonably accessible and available to Tubal-Cain, and Tubal-Cain

manifested assent by accepting the RSOs without objection to the terms and conditions. Under ordinary contract principles, Tubal-Cain is therefore bound by those terms and conditions, even if neither Van Huis nor anyone else at Tubal-Cain ever visited Crowley's website in order to familiarize himself with those terms and conditions. As the district court correctly stated, "[t]he fact that a party chooses not to review a contract, or terms and conditions, when they had the opportunity does not negate the fact that they are bound by those Terms and Conditions." *One Beacon Ins. Co.*, 2010 WL 1463451, at \*5; *see also Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) ("It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." (citation and internal quotation marks omitted)); Restatement (Second) of Contracts § 23 cmt. b ("[W]here an offer is contained in a writing [a party] may, without reading the writing, manifest assent to it and bind himself without knowing its terms. . . . [A]n offeror or offeree who should be aware of [the terms of a writing] may be bound in accordance with them if he manifests assent."). Tubal-Cain may not avoid contractual terms by pleading ignorance of their existence, if the contract is clear on its face that such terms were intended to be incorporated, Tubal-Cain had knowledge of and an opportunity to review those terms, and manifested assent thereto. *Cf.* 11 Williston at § 30:25. We therefore affirm the district court's holding that there was a written agreement between Tubal-Cain and Crowley which obligated Tubal-Cain to defend, indemnify, and procure insurance for Crowley.

## B.     One Beacon's Insurance Policy

Crowley contends that it was entitled to coverage as an additional insured under the One Beacon policy issued to Tubal-Cain. The parties do not dispute that Texas law controls the interpretation of the Policy. *See N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc.*, 513 F.3d 466, 470 (5th Cir. 2007) ("Absent a specific

and controlling federal rule, cases involving marine insurance contracts are governed by state law." (citing *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985)). Insurance policies are contracts, and thus "are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Id.* (citation omitted). When interpreting contract language, courts must strive to give meaning to "every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).

Section IV of the Policy, entitled "Who is an Insured," provides a list of persons and entities covered by the Policy. The Policy includes an endorsement, entitled "Additional Insured and Waiver of Subrogation Endorsement (Specific)," that modifies Section IV as follows:

> 1.    Section IV of the policy (Who is an Insured) is amended to include the persons(s) or organization(s) shown below as an Insured hereunder to the extent that you are obligated by an "insured contract" to include them as Additional Insured, but only with respect to "your work."
>
> 2.    We waive any right of recovery we may have against such Additional Insured as shown below because of payments we make for "bodily injury" or "property damage" arising out of "your work" done with that Additional Insured, but only to the extent of such obligation under the "insured contract". The waiver applies only to the person(s) or organization(s) shown below:

The space below the endorsement states only

NAME AND ADDRESS

TO BE ADVISED

The district court found that, to be an additional insured under the terms of the additional insured endorsement to the Policy, Crowley had the burden of

establishing both (1) that Tubal-Cain was obligated by an "insured contract" to include Crowley as an additional insured on the One Beacon policy; and (2) that Crowley was specifically identified in the endorsement as an additional insured. *See Rep. Waste Servs. of Tex., Ltd. v. Empire Indem. Ins. Co.*, 98 F. App'x 970, 971 (5th Cir. 2004) ("Under Texas law, additional insureds are strangers to an insurance policy and must bear the burden of proving additional insured status." (citing *Rep. Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 80 (Tex. App.—Dallas 1968, write ref'd n.r.e.))).

The district court held that the oral agreement, the RSO, and the subsequent invoice together constituted one entire transaction or agreement between the parties that satisfied the "insured contract" requirement as defined by the Policy. But the district court held that the language of the endorsement unambiguously required that Crowley also be specifically named in the Policy to qualify as an additional insured. Crowley's name does not appear on the endorsement, and Crowley does not dispute that it is not specifically named anywhere in the Policy as an additional insured. Because Crowley was not named, the district court held that Crowley was not entitled to additional insured coverage.

On appeal, Crowley disputes the district court's holding that Crowley was required to be specifically named in the additional insured endorsement or in the Policy to be eligible for coverage. Crowley contends that Section IV of the Policy (entitled "Who is an Insured") includes a list of persons, such as Tubal-Cain's executive officers, directors, and employees, who qualify as additional insureds covered by, but who do not have to be specifically named in, the Policy. Crowley contends that the additional insured endorsement adds to this list another category of parties that need not be named in the Policy to be eligible for coverage as additional insureds: any party that is a party to an "insured contract" with Tubal-Cain within the meaning of the Policy. Noting that the term "named" does

not appear in the endorsement, Crowley argues that the endorsement provides blanket additional insured coverage for those parties with an "insured contract" with Tubal-Cain. Crowley points to evidence that purportedly shows that it was Tubal-Cain's intention to procure blanket coverage for its ship repair customers, as opposed to specific coverage that required new parties to be added to the Policy as specific named additional insureds. Crowley contends in the alternative that the Policy is ambiguous on this point, and should therefore be construed in favor of coverage.

We agree with One Beacon that Crowley's reading of the endorsement as providing coverage for any party that has an "insured contract" with Tubal-Cain renders meaningless other language in the endorsement. Section 1 of the endorsement reads: "Section IV of the policy (Who is an Insured) is amended to include *the persons(s) or organization(s) shown below* as an Insured hereunder *to the extent* that you are obligated by an "insured contract" to include them as Additional Insured . . . ." (emphases added). Moreover, Section 2 also clearly applies "only to the person(s) or organization(s) shown below." The language of the endorsement unambiguously requires an additional insured to be named in the endorsement. Therefore, we affirm the district court's holding that Crowley—which is not named in the Policy—is not an additional insured under the Policy.[3]

## C.    Attorney's Fees

Crowley seeks a remand for a calculation of attorney's fees to which it claims it is entitled. Crowley argued before the district court that it was entitled to fees for its defense of the underlying personal injury suit and requested an

---

[3] Because we find that Crowley is not entitled to coverage under the Policy as an additional insured on this basis, we need not reach One Beacon's alternative argument that Crowley did not have an "insured contract" within the meaning of the Policy as required by the additional insured endorsement.

additional hearing on the issue of attorney's fees in the event that it prevailed on its claims. The district court made no ruling regarding attorney's fees, and we therefore remand to the district court for a determination of Crowley's entitlement, if any, to attorney's fees in this case.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court, and REMAND for further proceedings consistent with this opinion. Costs shall be borne equally by Tubal-Cain and Crowley.