**Calvin W. CARTER d/b/a The Carter Group, LLC, Appellant,**

v.

**PEOPLEANSWERS, INC., Appellee.**

**No. 05–09–00566–CV.**

Court of Appeals of Texas, Dallas.

May 13, 2010.

Richard L. Bufkin, Dallas, TX, for Appellant.

Ronald Wayne Chapman, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Dallas, TX, for Appellee.

Before Justices RICHTER, LANG–MIERS, and MYERS.

## OPINION

Opinion By Justice MYERS.

Calvin W. Carter d/b/a The Carter Group, LLC appeals the summary judg-

ment rendered against him on his claims against PeopleAnswers, Inc. Appellant brings four issues asserting the trial court erred in granting appellee's motion for summary judgment because (a) the release on which appellee relied was not effective or did not release appellant's claims; (b) the written employment agreement was not effective; (c) if the written employment agreement was effective, then its terms did not support judgment for appellee; and (d) the statute of frauds did not apply to the parties' oral employment agreement. We affirm the trial court's judgment.

## BACKGROUND

Appellee is a marketer of software used to provide personality profiles on prospective employees. Appellant was a sales agent for appellee selling "services agreements" to appellee's clients. During appellee's early years, it wanted an "Iconic Customer" whose recognition and credibility would support the sale of the software. In 2002, appellant obtained both a lucrative and "Iconic" client for appellee by procuring a services agreement with Neiman Marcus. Another client obtained by appellant was Lonestar Freight.

Appellee permitted appellant to sign up and train "third-party referral agents," and appellant would receive a share of the commissions earned by those agents. Appellant signed up Jane Pierotti and her corporation, Counterpoint, Inc., in August 2002, and he finished training her within a year. However, her company did not earn any commissions until October 2004.

In 2003, the parties signed a release of claims against each other effective September 15, 2003. Besides the mutual release of claims, the consideration for the release was to be a $4000 cash payment from appellee to appellant and appellee's guarantee that appellant's stock options were vested. Appellee was unable to show it paid appellant the $4000, but the stock options were vested.

Until at least January 2004, appellant and appellee's relationship was governed under an oral agreement. In January 2004, appellee prepared a written contract, the "Marketing Referral Agreement," incorporating their oral agreements. Appellant executed the agreement, but appellee did not. However, appellant stated that certain of the financial terms of the written agreement were identical to the oral agreement. Their agreement provided appellant would receive a fifty-percent commission on Neiman Marcus's services agreement "as long as [appellant] is actively involved in the renewal of their Services Agreement." Appellant would also receive a commission for three years for "any third party that [appellant] successfully signs up as another referral party."

Appellant was actively involved in the renewals of the Neiman Marcus and the Lonestar Freight agreements, and he received commissions on those accounts for 2004, 2005, and 2006. Counterpoint began earning commissions in October 2004, but appellant was not paid a commission for Counterpoint's sales.

In 2007, appellant was seriously injured in a plane crash. While still recovering, appellant expressed his intent to make his annual visit to Neiman Marcus to obtain the renewal of the services agreement. However, appellee's president told appellant that due to his injuries, his participation would not be required or necessary. Neiman Marcus and Lonestar Freight renewed their services agreements for 2007, but appellee did not pay appellant a commission because he had not been actively involved in the renewal of their services agreements. On September 25, 2007, appellee told appellant "there is no longer a need for you to continue to be

involved with our relationship with Neiman Marcus and Lonestar. We got it covered." On November 19, 2007, appellee gave appellant notice it was terminating their agreement.

In 2008, appellant sued appellee for breach of contract from appellee's failure to pay appellant commissions for the sales to Neiman Marcus and Lonestar Freight, and the failure to pay appellant a share of the commissions earned by the third-party referral agent, Counterpoint. In his live pleading, appellant alleged the parties' agreement was an oral agreement and that the written Marketing Referral Agreement was not a valid contract. Appellant pleaded that appellee breached the oral agreement. Appellant also pleaded alternatively that if the written Marketing Referral Agreement was the contract of the parties, then appellee breached that agreement by not paying him the commissions.

Appellee moved for summary judgment on appellant's claims, asserting appellant was not entitled to the commissions under either the parties' oral agreement or the written Marketing Referral Agreement. The trial court granted appellee's motion for summary judgment.

## SUMMARY JUDGMENT

The standard for reviewing a traditional summary judgment is well established. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Defendants who move for summary judgment must show the plaintiffs have no cause of action. Defendants may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the

evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). After the movants have established a right to summary judgment, the burden shifts to the nonmovants to present evidence creating a fact issue. *Denson v. Dallas County Credit Union*, 262 S.W.3d 846, 849 (Tex.App.-Dallas 2008, no pet.). When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App.-Dallas 2007, pet. denied). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex.App.-Dallas 2009, pet. denied).

In this case, the trial court did not specify the ground on which it granted appellee's motion for summary judgment. Accordingly, if any of the grounds in appellee's motion are meritorious, we must affirm the trial court's judgment.

## STATUTE OF FRAUDS

■ In his issue "d.," appellant asserts the trial court erred in granting the motion for summary judgment on appellee's assertion that the statute of frauds applies to appellant's alleged oral agreement and bars enforcement of the agreement. *See* TEX. BUS. & COM.CODE ANN. § 26.01(a), (b)(6) (Vernon 2009).

In the supplemental motion for summary judgment, appellee asserted an additional summary judgment ground that

appellant's claims for commissions on sales to Neiman Marcus and Lonestar Freight as well on sales by Counterpoint were barred by the statute of frauds. In his brief on appeal, appellant argued his claim for a share of the commissions on sales by Counterpoint was outside the statute of frauds. However, appellant does not argue on appeal that his claim for commissions on the renewal of the Neiman · Marcus and Lonestar Freight services agreements was outside the statute of frauds. Because appellant does not address this ground as to the Neiman Marcus and Lonestar Freight commissions, we must affirm the summary judgment as to those commissions. *See Malooly Bros., Inc.,* 461 S.W.2d at 121; *Jarvis,* 298 S.W.3d at 313. We overrule appellant's issue "d." as to appellant's claims for commissions from the renewal of the services agreements with Neiman Marcus and Lonestar Freight.

### THE RELEASE

In issue "a.," appellant contends the trial court erred in granting the motion for summary judgment based on the ground that appellant released his claims against appellee. Appellant asserts appellee's reliance on the release fails because appellee did not pay the $4000 consideration and because the release did not apply to claims arising after the release's effective date, September 15, 2003.

The release stated the consideration for the release was a cash payment of $4000 from appellee to appellant to be made by March 31, 2004. Appellant argues that appellee's failure to pay the $4000 resulted in a failure of consideration entitling him to rescind the release agreement. Appellee asserts the failure to pay the $4000 was a partial, nonsubstantial failure of consideration, which did not permit appellant to rescind the release.

Only a substantial failure of consideration will operate to discharge the other party. *Estate of Menifee v. Barrett,* 795 S.W.2d 810, 815 (Tex.App.-Texarkana 1990, no writ); *Huff v. Speer,* 554 S.W.2d 259, 263 (Tex.Civ.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.). A partial failure of consideration does not invalidate the contract but entitles the injured party to a suit for damages. Moreover, the right of rescission is waived by the injured party's retention of the partial performance rendered by the breaching party. *Estate of Menifee,* 795 S.W.2d at 815.

Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991); *Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 702 (Tex.App.-Dallas 2008, no pet.). The release in this case contained three types of consideration: the $4000 cash payment, the mutual release of all claims, and appellee's acknowledgment that appellant's stock options were fully vested and not subject to forfeiture. Appellant later redeemed all of his stock options earned during his employment with appellee for about $250,000. We conclude the partial failure of consideration did not invalidate the release.

The text of the release shows the parties each did "release, hold harmless, and forever discharge" the other "from and against any and all damages, debts, losses, claims, liabilities, demands, or causes of action in law or in equity of any kind whatsoever, … which are directly or indirectly attributable" to the parties' agreements concerning appellant's stock options, the engagement of the appellant's corporation, TCG, and appellant's conduct of business and relationship with appellee through TCG.

Appellee asserted in its motion for summary judgment that appellant released his right to commissions on sales generated by Counterpoint because the right to those commissions was part of appellant's conduct of business and relationship with appellee. Appellant asserts the release did not bar appellant's claim because his claim for commissions arose after the effective date of the release. In the release, however, appellant did not merely release his claim for accrued commissions but all claims based on his past relationship with appellee. That relationship included his right to a share of the commissions on the future sales, if any, by Counterpoint. At the time of the release, appellant had signed up Counterpoint, but it had not yet earned any commissions. Appellant's claim for a share of Counterpoint's commissions is one "arising out of, in connection with, or with respect to ... [appellant's] conduct of business and relationship with appellee" before the release. Accordingly, appellant's claim for a share of Counterpoint's commissions was released. We overrule appellant's issue "a."

We conclude the trial court did not err in granting the motion for summary judgment on appellant's breach-of-contract claim based on the parties' oral agreement.

## CLAIMS UNDER THE WRITTEN AGREEMENT

■ In issue "c.," appellant argues that if the written Marketing Referral Agreement does constitute the parties' operative agreement, then the trial court erred in granting the motion for summary judgment. Appellant asserts that the terms of the written agreement support his claim for breach of contract.

Appellant argues that under the written agreement, he was entitled to commissions on Neiman Marcus's and Lonestar Freight's renewal of their services agreements after his termination as long as he was involved in the renewal of the agreements. Appellant argues that paragraphs 3 and 22 of the written agreement provide that appellant's commissions on the renewal of the accounts would continue after his termination. Appellant asserts he was entitled to a commission for the 2008 renewals of the Neiman Marcus and Lonestar Freight services agreements after his termination because he was actively involved in their renewal. Paragraphs 3 and 22 provide that the terms of the agreement concerning payment of commissions survive its termination. In paragraph 2 of the agreement, appellee agreed to pay appellant "a commission on Service Agreements signed during the term of this Agreement." The renewals for 2008, however, were signed after appellant was terminated, so the renewals were not "signed during the term of this Agreement," and appellant was not entitled to commissions for the renewals of those services agreements.

■ Concerning appellant's right to a share of the commissions earned by Counterpoint, the written agreement stated, "For any third party that [appellant] successfully signs up as another referral party, commissions will be paid to [appellant] according to the following schedule:...." The phrase, "successfully signs up" refers to future events, not to third parties, like Counterpoint, already signed up as referral agents.

We conclude the trial court did not err in granting appellee's motion for summary judgment concerning appellant's claim that appellee breached the parties' written agreement. We overrule appellant's issue "c."

Because of our determination of the issues discussed above, we need not reach

appellant's remaining issues. *See* TEX. R.APP. P. 47.1.

We affirm the trial court's judgment.