# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00394-CV

---

### TBC - The Boring Company, Appellant

### v.

### 304 Construction, LLC, Appellee

---

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY
### NO. 2214-335, THE HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, TBC – The Boring Company (TBC) challenges the trial court's order denying its second motion to abate and compel arbitration in the suit of 304 Construction, LLC against TBC. For the following reasons, we reverse the trial court's order denying TBC's motion and remand the case to the trial court.

## BACKGROUND

On May 30, 2022, TBC issued Purchase Order 21840-1 (the "Purchase Order") to 304 Construction to provide certain construction materials and services related to the construction of a manufacturing building located in Bastrop County. On that day, the parties exchanged emails, the Purchase Order was revised, and after it was revised, 304 Construction confirmed by email that it had received it. The Purchase Order is one page plus a few lines on a second page and states the materials and services to be supplied; the order total of $1,084,954.00;

the payment terms of "33% down," "33% after select fill placed," and "34% when complete"; and the email address for invoices. On the second page, the Purchase Order states:

**Terms & Conditions**:
Per Boring Company standard terms - https://www.boringcompany.com/terms-and-conditions.

On June 1, 2022, 304 Construction invoiced TBC for "33% DOWN" referencing the Purchase Order, and TBC paid the invoiced amount a few days later. Pursuant to the terms of the Purchase Order, 304 Construction provided materials and services, and TBC paid invoiced amounts.

A few months after the Purchase Order was issued, a dispute arose between the parties as to the scope of the services that 304 Construction had agreed to provide and the amounts that TBC had agreed to pay. After TBC refused to pay disputed amounts, 304 Construction sued TBC. In its amended petition, 304 Construction sought damages for breach of contract, fraud, and quantum meruit related to TBC's alleged failure to pay for construction services that 304 Construction had provided. 304 Construction alleged that it "entered into an agreement with [TBC] to provide certain construction materials and services related to the construction of a commercial manufacturing structure," that "substantial inaccuracies in the geotechnical reports previously provided to [it]" "created the necessity of a significant change and increase in the scope of construction services," that TBC agreed to the changes and to "fairly" compensate 304 Construction for the expanded scope of services, and that TBC had refused to pay the "increased amount due as a result [of] the change in scope of construction services." 304 Construction attached to its petition a September 2022 statement showing alleged amounts owed under four invoices to TBC.

2

TBC answered, filed a motion to abate and compel arbitration, and then a second motion to abate and compel arbitration. In the second motion to abate and compel arbitration, TBC relied on the "terms and conditions incorporated into the agreement between [the parties] and the Federal Arbitration Act." TBC supported its motion with declarations from its Chief Financial Officer (CFO) and its Director of Legal Affairs and attachments including the Purchase Order, the email exchange between 304 Construction and TBC in which 304 Construction confirmed that it had received the Purchase Order as revised on May 30,[1] invoices from 304 Construction referencing the Purchase Order,[2] and a copy of TBC's "Terms and Conditions," which contain the following arbitration provision:

> (a) All disputes and controversies arising out of this Contract including the existence, construction, validity, interpretation, performance, nonperformance, enforcement or breach of any provision, shall be settled by mediation and, if necessary, arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The parties agree to submit any dispute or controversy to binding arbitration before one (1) impartial arbitrator selected by AAA with costs to be borne equally by the parties. The federal rules of civil procedure shall apply, to include depositions, with respect to the arbitration. Any arbitration hearings shall take place in the Austin, Texas metropolitan area. The findings of the arbitrators shall be final and binding upon

---

[1] The CFO declared that the copy of the email was true and correct:

5.      As demonstrated by the true and correct copy of the email attached as Exhibit A-3 to the Motion, [304 Construction]'s principal Adam Meuth acknowledged receipt of the Purchase Order on May 30, 2022. On June 1, 2022, [304 Construction] provided TBC with its first invoice, Invoice No. 1078-21-28, which referenced the Purchase Order.

[2] The CFO also declared that the attached invoices were true and correct copies and that "each of the invoices submitted to TBC referenced the Purchase Order." Although each of the invoices referenced the project, two invoices in the amounts of $3,140 and $4,019.26 referenced different purchase orders, and one invoice did not list a purchase order.

the parties. Any award of arbitration may include attorneys' fees and costs, including but not limited to expert witness fees, payable to the prevailing Party in the arbitration, as determined by the arbitrators.

The terms and conditions define "Contract" as "the instrument of contracting, such as 'Purchase Order' . . . or other such type designation, including these Standard Terms and Conditions, all referenced documents, exhibits and attachments," and also include a provision outlining the procedures for making changes to the scope of the contract and stating that the parties' failure to agree to an adjustment based on a change in scope is subject to the disputes provision, which is the parties' agreement to arbitrate.

In her declaration, the Director of Legal Affairs stated the following about the Purchase Order and TBC's terms and conditions:

> I am the Director of Legal Affairs for The Boring Company ("TBC"), and in such position, have personal knowledge regarding the existence of Terms and Conditions that are incorporated into TBC's agreements. It is within my personal knowledge that TBC had an agreement with Plaintiff 304 Construction, LLC ("Plaintiff") for Plaintiff to provide materials and perform certain work for TBC under the terms of the specific Purchase Order No. 21840-1 (the "Purchase Order"). A true and correct copy of the Purchase Order is attached to the Second Motion as Exhibit A-1. The Purchase Order expressly incorporated TBC's standard terms and conditions, which were available online at https://www.boringcompany.com/terms-and-conditions (the "Terms and Conditions"). A true and correct copy of the Terms and Conditions that were accessible on the website on all dates relevant to this dispute, including from May 30–June 1, 2022, and which were incorporated by the Purchase Order by reference, is attached to the Second Motion as Exhibit A-2. It is within my specific personal knowledge as Director for Legal Affairs of TBC at all relevant times, and based upon my review of contemporaneous company records, that these Terms and Conditions attached as Exhibit A-2 are exactly as they appeared on the https://www.boringcompany.com/terms-and-conditions webpage on May 30–June 1, 2022.

The CFO declared he was TBC's custodian of records, made similar declarations to the ones made by the Director of Legal Affairs about the Purchase Order and TBC's terms and conditions,

4

and also declared: "At no time did [304 Construction] object to any of the Terms and Conditions referenced in the Purchase Order" and that TBC "promptly paid" 304 Construction's invoiced amount for the initial payment of "33%" as set forth in the Purchase Order.

304 Construction filed a response in opposition to TBC's second motion to abate and compel arbitration, contending that TBC had failed to establish that a valid, enforceable arbitration agreement existed and objecting to TBC's evidence.[3] 304 Construction argued that TBC had failed "to produce any admissible evidence containing a valid and enforceable arbitration agreement" and asserted the defenses of fraudulent inducement and failure of consideration. 304 Construction attached TBC's terms and conditions that were attached to TBC's initial motion to abate and compel arbitration and contain the date and time—"10/13/22,

---

[3] 304 Construction objected to both versions of the terms and conditions—the copy of TBC's terms and conditions that was attached to TBC's initial motion to abate and compel arbitration and the copy of TBC's terms and conditions attached to its second motion to abate and compel arbitration—on the grounds that they were not properly authenticated or verified and to the declarations on the grounds that they were not competent and admissible evidence. For example, 304 Construction argues that the CFO and the Director of Legal Affairs are not "web administrators" and "certainly neither [one] actually published any terms on [TBC's] website" such that they had the personal knowledge to authenticate TBC's terms and conditions and describes the CFO's declaration attached to TBC's second motion as containing "numerous instances of contradictions and inconsistencies that demonstrate its lack of credibility" as to the terms and conditions that were available on TBC's website when the Purchase Order was issued and that the CFO "admits that a true and accurate copy of the terms and conditions [is] not available."

In the declaration attached to the second motion to abate and to compel arbitration, the CFO declared that he "made a mistake in affirming" the "version" of the terms and conditions, "which appeared on a screenshot from October 20, 2022," which were attached to TBC's initial motion to abate and compel arbitration. He explained that TBC's "vendor who hosts the TBC website is unable to provide me with a historic snapshot of the actual webpage" during the relevant time period but that the CFO "[could] affirmatively state without equivocation that the Terms and Conditions attached as Exhibit A-2 are the exact Terms and Conditions that were available on the website referenced and incorporated into the Purchase Order at the relevant time period from May 30–June 1, 2022."

11:23 AM"—at the top of each page and TBC's webpage address at the bottom of each page. 304 Construction asserted that the October 2022 version of TBC's terms and conditions and the terms and conditions[4] attached to TBC's second motion were inadmissible and that TBC had not provided admissible evidence that demonstrated that an arbitration agreement existed during the relevant time.

TBC filed a reply to the response; the trial court held a hearing on TBC's second motion to abate and compel arbitration; and following the hearing, the trial court signed the order denying the motion. The trial court, however, did not rule on 304 Construction's objections to TBC's evidence when it denied the motion.[5] This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code §§ 51.016 (authorizing appeal of interlocutory order as would be permitted under FAA), 171.021 (requiring court to order parties to arbitration on application of party showing agreement to arbitrate), 171.098(a)(1) (authorizing party to appeal order denying application to compel arbitration under Section 171.021).[6]

---

[4] The terms and conditions, which are attached to TBC's second motion to abate and compel arbitration, are undated.

[5] The appellate record does not include a reporter's record from the hearing on TBC's second motion to abate and compel arbitration, but the parties agree in their briefing that the trial court did not rule on 304 Construction's objections during the hearing, and the trial court's order denying TBC's motion does not address 304 Construction's objections.

[6] Neither party contends that this appeal presents an issue involving a conflict between Texas and federal law about the existence or scope of the parties' agreement to arbitrate. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008) ("Whether a case is governed by the Federal Arbitration Act (FAA) or the TAA, many of the underlying substantive principles are the same[.]").

# ANALYSIS

In its sole appellate issue, TBC argues that the trial court erred in denying its second motion to abate and compel arbitration.

## Standard of Review and Applicable Law

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.* A trial court abuses its discretion if it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Further "[a] trial court has no discretion in determining what the law is" "or how to apply the law." *U-Haul Co. of Tex. v. Toro*, No. 01-22-00883-CV, 2023 Tex. App. LEXIS 8906, at *18 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op.) (citing *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

"When an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious." *Id.* (citing *In the Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)). And "[w]here, as here, the trial court makes no written findings of fact or conclusions of law in support of its ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Constant v. Gillespie*, No. 05-20-00734-CV, 2022 Tex. App. LEXIS 3415, at *12 (Tex. App.—Dallas

7

May 18, 2022, no pet.) (mem. op.) (citing *Redi-Mix, LLC v. Martinez*, No. 05-17-01347-CV, 2018 Tex. App. LEXIS 5683, at \*4 (Tex. App.—Dallas July 25, 2018, no pet.) (mem. op.)); *accord BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

"Whether parties have committed their disputes to arbitration is a gateway matter for the court to decide and is 'controlled by state law governing "the validity, revocability, and enforceability of contracts generally."'" *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020) (quoting *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 631 & n.12 (Tex. 2018)); *see Constant*, 2022 Tex. App. LEXIS 3415, at \*14 ("Arbitration agreements are creatures of contract."). "A party seeking to compel arbitration must first establish that a valid arbitration agreement exists and that the claims are within the agreement's scope." *Bonsmara Nat. Beef Co.*, 603 S.W.3d at 397 (citing *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding)); *see In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding) (explaining that "burden is on the moving party to show a valid agreement to arbitrate" (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003))). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Murdock v. Trisun Healthcare, LLC*, No. 03-10-00711-CV, 2013 Tex. App. LEXIS 5638, at \*7 (Tex. App.—Austin May 9, 2013, pet. denied) (mem. op.) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227).

"Whether a valid and enforceable arbitration agreement exists between [the parties] is a legal question subject to de novo review." *Id.* at \*4. "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (quoting *In re*

*24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding)); *see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding) (stating that when trial court concludes that arbitration agreement encompasses claims and party opposing arbitration has failed to prove defenses, trial court "has no discretion but to compel arbitration").

**Existence of Arbitration Agreement**

In this case, the pleadings and evidence established that a contract existed between TBC and 304 Construction based on the terms stated in the Purchase Order. 304 Construction confirmed its receipt of the Purchase Order as revised on May 30, invoiced TBC on June 1 for "33% Down" with reference to the Purchase Order, and subsequently invoiced TBC based on the payment terms stated in the Purchase Order. On its face, the Purchase Order identifies the materials and services that 304 Construction agreed to supply, the total amount that TBC agreed to pay, and the agreed payment terms, and expressly states: "**Terms and Conditions**: Per Boring Company standard terms—https://www.boringcompany.com/terms-and-conditions." The parties' dispute concerns whether TBC established that the referenced terms and conditions as they existed on its website during the relevant time contained a provision requiring the parties to arbitrate disputes.

"A motion to compel arbitration is similar to a motion for partial summary judgment and subject to the same evidentiary standards." *Murdock*, 2013 Tex. App. LEXIS 5638, at *5 (citing *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)); *see* Tex. Civ. Prac. & Rem. Code § 171.021(b) (stating that "court shall summarily determine" existence of agreement to arbitrate if party opposing application denies existence); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)

9

(explaining that trial court may summarily decide whether to compel arbitration based on uncontroverted affidavits, pleadings, discovery, and stipulations). "The party moving to compel arbitration 'must present complete summary proof of his case in chief' proving the existence of an arbitration agreement covering the claims at issue." *Murdock*, 2013 Tex. App. LEXIS 5638, at *6 (citing *Jebbia*, 26 S.W.3d at 757); *see Constant*, 2022 Tex. App. LEXIS 3415, at *14 ("It is axiomatic that a party seeking to prove its right to enforce a contractual remedy of arbitration must submit competent, prima facie evidence of the arbitration agreement itself.").

"Under the summary judgment standard, copies of documents must be authenticated in order to constitute competent summary judgment evidence." *Dimension Homes, Inc. v. Lewis*, No. 14-20-00316-CV, 2022 Tex. App. LEXIS 2017, at *6 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, no pet.) (mem. op.) (citing *In the Estate of Guerrero*, 465 S.W.3d at 703). "To satisfy the authentication requirement, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Constant*, 2022 Tex. App. LEXIS 3415, at *14–15 (citing Tex. R. Evid. 901(a)). "The testimony of a witness with knowledge is one way to prove authenticity." *Id.* at *15 (citing *Kyäni, Inc. v. HD Walz II Enters., Inc.*, No. 05-17-00486-CV, 2018 Tex. App. LEXIS 5610, at *12 (Tex. App.—Dallas July 24, 2018, no pet.) (mem. op.)); *see* Tex. R. Evid. 901(b)(1). Thus, "[a] properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as evidence." *Dimension Homes*, 2022 Tex. App. LEXIS 2017, at *6 (citing *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986) (per curiam)).

In the declarations of TBC's CFO and Director of Legal Affairs, they state that they have personal knowledge of the facts stated in their declarations and that they are true and

correct; that the Purchase Order and the terms and conditions attached as exhibits are true and correct copies; that the Purchase Order "expressly incorporated TBC's standard terms and conditions, which were available online at https://www.boringcompany.com/terms-and-conditions"; and that the terms and conditions that were attached as an exhibit were "exactly as they appeared on the https://www.boringcompany.com/terms-and-conditions webpage on May 30–June 1, 2022." *See* Tex. R. Evid. 901(b)(1); *see also One Beacon Ins. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267–68 (5th Cir. 2011) (explaining that under general contract principles, terms in separate document that are incorporated by reference in contract are "valid so long as it is clear that the parties to the agreement had knowledge of and assented to the incorporated terms" and stating that court saw "no reason to deviate from these principles where, as here, the terms to be incorporated are contained on a party's website").[7]

The evidence also established 304 Construction's confirmation that it had received the Purchase Order as revised, its acceptance of the Purchase Order's terms by its submission of an invoice referring to the Purchase Order, and its acceptance of payment on the

---

[7] 304 Construction did not argue to the trial court and does not argue on appeal that the Purchase Order did not incorporate by reference TBC's standard terms and conditions that were available on its website but instead argues that TBC failed to establish what those terms and conditions were during the relevant time. *See One Beacon Ins. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268–69 (5th Cir. 2011) (addressing incorporation by reference of online terms into parties' agreement); *see also U-Haul Co. of Tex. v. Toro*, No. 01-22-00883-CV, 2023 Tex. App. LEXIS 8906, at *22–24 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op.); *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (explaining that language used to refer to incorporated document is "not important as long as it 'plainly refers' to the incorporated document" (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968))); *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, No. 1:11-CV-01026, 2012 U.S. Dist. LEXIS 1540, at *16 (D.S.D. Jan. 5, 2012) (order & op.) ("With the widespread accessibility of the [i]nternet, companies are turning to posting their general terms and conditions online and incorporating them into a physical document by reference to the [i]nternet site where they are located.").

invoice a few days later. *See One Beacon Ins.*, 648 F.3d at 269 ("The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms."); *see also Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet denied) (concluding that party with notice of and opportunity to review contract terms is bound to terms even if party has not read them and that "same rule applies to contracts which appear in an electronic format"). TBC's terms and conditions, which were attached to TBC's second motion and referenced in the declarations, contain an arbitration provision that the parties would arbitrate "[a]ll disputes and controversies arising out of this Contract including the existence, construction, validity, interpretation, performance, nonperformance, enforcement or breach of any provision."

Acknowledging that the trial court did not rule on its objections to TBC's evidence,[8] 304 Construction argues that the trial court "could have deemed that the 'evidence' submitted by [TBC] was not sufficient to meet its burden due to the inconsistencies . . . and its lack of credibility" and that TBC "offered no direct evidence that [an] arbitration clause existed on the internet as alleged." 304 Construction describes the CFO's declaration attached to TBC's

---

[8] 304 Construction's objections were as to the form of TBC's evidence. *See U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at *29–30 (stating that defect in form of authentication of document such as affidavit attempting to authenticate documents is defect in form); *Smiley Dental-Bear Creek, P.L.L.C. v. SMS Fin. LA, LLC*, No. 01-18-00983-CV, 2020 Tex. App. LEXIS 6602, at *10–11 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.) (listing types of objections that are considered objections as to form). Thus, because the trial court did not rule on those objections, they have been waived on appeal. *See U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at *26–27 ("not[ing] that [party] waived this objection to [exhibit attached to motion to compel arbitration] by failing to obtain a ruling on it from the trial court" and citing cases concluding that party waives objection to evidence to support motion to compel arbitration or motion for summary judgment by failing to obtain ruling on objection).

second motion to abate and compel arbitration as having "numerous instances of contradictions and inconsistencies that demonstrate its lack of credibility" and contrasts it with the CFO's declaration that was attached to TBC's initial motion. In that declaration, the CFO referenced the October 2022 version of TBC's terms and conditions on its website. 304 Construction also challenges the copy of TBC's terms and conditions attached to its second motion because it "is not a true and accurate copy of any webpage as [it] lacks web navigation buttons on the top and the bottom of the document" and compares that version to the October 2022 version that "contains said navigation buttons." Based on the CFO's declarations as to the two versions of the terms and conditions, 304 Construction argues that the CFO "perjured himself in the first declaration and is no longer credible" and that TBC's evidence was of a "conflicting nature."

In his declaration attached to TBC's second motion to abate and compel arbitration, however, the CFO explains that he made a mistake in his prior declaration by affirming that TBC's terms and conditions as they appeared on the website in October 2022 "were the same terms and conditions that existed at the time the Purchase Order was submitted"; that their "vendor who hosts the TBC website is unable to provide [him] with a historic shapshot of the actual webpage" at the time the Purchase Order was submitted; and that based on his review of TBC's business records and his "own personal knowledge" of when changes were made to the terms and conditions, for which he and the Director for Legal Affairs were "solely responsible," he "can affirmatively state without equivocation that the Terms and Conditions attached as [an exhibit] are the exact Terms and Conditions that were available on the website referenced and incorporated into the Purchase Order at the relevant time period from May 30–June 1, 2022."

304 Construction asserts facts and describes evidence that TBC could have presented but did not to authenticate the copy of TBC's terms and conditions attached to its second motion, but 304 Construction did not present evidence that would support its asserted facts or otherwise present contrary evidence.[9] 304 Construction also does not address the declaration of the Director for Legal Affairs who made the same declarations as the CFO did about the copy of TBC's terms and conditions that was attached to TBC's second motion. Even if 304 Construction had not waived its objections to the declarations, it has not cited, and we have not found, authority that: (i) would preclude the Director's declarations from authenticating the copy of TBC's terms and conditions as a true and correct copy of the version of the terms and conditions on its website when the Purchase Order was issued or (ii) would require actual screenshots of the webpages at issue in order to authenticate a copy of the terms and conditions referenced in the Purchase Order. *See* Tex. R. Evid. 901(b)(1) (stating that evidence may be authenticated through testimony of witness with knowledge); *U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at *30 (explaining that in "summary proceeding, '[a] properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as . . . evidence'" (quoting *In re Guerrero*, 465 S.W.3d at 704)). It follows that TBC's uncontroverted evidence established the existence of an arbitration agreement as a matter of law. *See Tipps*, 842 S.W.2d at 269–70 (holding that motion to compel arbitration may be decided summarily without evidentiary hearing and that uncontroverted

---

[9] For example, 304 Construction states, "It is a known fact that the terms and conditions have changed at least once during the relevant time period" and that the webpage administrator "certainly could have provided a log of when changes were made and email trail of the changes he/she was instructed to make." The copy of the October 2022 version of TBC's terms and conditions and the copy of the terms and conditions that was attached to TBC's second motion include identical arbitration provisions.

affidavit "even of party's agent" must be accepted as true); *see also U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at *30 (explaining that "party can satisfy its evidentiary burden to prove the existence of an arbitration agreement by submitting an authenticated copy of an agreement containing an arbitration clause").

**Scope of Agreement to Arbitrate**

To support its motion to compel arbitration, TBC also had to establish that 304 Construction's asserted claims were within the scope of the arbitration agreement. *See G.T. Leach Builders, LLC v. Sapphire V.P.*, 458 S.W.3d 502, 524 (Tex. 2015) (citing Tex. Civ. Prac. & Rem. Code § 171.021(a)).

"To determine whether a claim falls within the scope of an arbitration agreement, we look at the terms of the agreement and the factual allegations in the petition." *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding) (citing *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995)). "Generally, if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable." *Id.* (quoting *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding)); *see U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at *31–32 (stating that in determining whether claim falls within scope of arbitration agreement, focus is "on the factual allegations in the plaintiff's petition, rather than the legal causes asserted, and the terms of the arbitration agreement"); *see also Matter of Amberson*, 54 F.4th 240, 266 (5th Cir. 2022) (explaining that under Texas law, to come within scope of arbitration provision, party's allegations need only be factually intertwined

15

with arbitrable claims or otherwise touch upon subject matter of agreement containing arbitration provision).

304 Construction argues that TBC "has acknowledged that the payment demanded [by 304 Construction] is 'outside' the [P]urchase [O]rder and thus [304 Construction's] claims are not subject to the alleged arbitration clause." But, at a minimum, 304 Construction's pleaded claims touch matters and are factually intertwined with the terms of the parties' contract that is based on the Purchase Order. 304 Construction alleged that it had "fully performed" its contractual obligations and that TBC "has failed to perform its contractual obligations," and the parties' dispute concerns the scope of the services and materials that 304 Construction agreed to provide under the Purchase Order's terms and the amount that TBC agreed to pay for those services and materials. 304 Construction contends that it provided an expanded scope of services and that TBC agreed to pay an amount that exceeded the total amount stated in the Purchase Order. And TBC's evidence established that the terms of the Purchase Order included TBC's standard terms and conditions, which included the parties' agreement to arbitrate "all disputes and controversies arising out of this Contract" and a provision addressing the procedure for making changes to the general scope of the contract. Thus, we conclude that TBC's evidence established that 304 Construction's claims are within the scope of the arbitration agreement.[10] *See U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at

---

[10] TBC also argues that the issue of whether 304 Construction's claims are within the scope of the arbitration agreement is for the arbitrator to decide because the parties agreed to arbitrate "in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA")." *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019) (explaining that agreement to arbitrate that incorporates AAA rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012))).

*31, *35–36 (stating that whether "scope of arbitration agreement encompasses the claims in dispute is a question of law that we review de novo" and that "[t]here is a presumption favoring arbitration and a policy to construe arbitration agreements broadly" and collecting cases addressing broad scope of arbitration agreements); *see also In re FirstMerit Bank*, 52 S.W.3d at 753 (explaining that when determining whether claim falls within scope of arbitration agreement, there is presumption in favor of arbitration and that courts must resolve any doubts about scope in favor of arbitration).

Because TBC's evidence established that 304 Construction's disputed claims are within the scope of a valid agreement to arbitrate and 304 Construction did not present contrary evidence, the burden shifted to 304 Construction to present evidence that supported an affirmative defense to arbitration. *See Yong Yu v. Chao-Qun Lu*, No. 03-22-00036-CV, 2022 Tex. App. LEXIS 3903, at *5 (Tex. App.—Austin June 8, 2022, pet. filed) (mem. op.) (explaining that if party proves that disputed claims are within scope of valid agreement to arbitrate, burden shifts to opposing party to set up affirmative defense to arbitration (citing *Bonsmara Nat. Beef Co.*, 603 S.W.3d at 397–98)); *see also In re FirstMerit Bank*, 52 S.W.3d at 756 (stating that by suing based on contract with arbitration addendum, parties subjected themselves to contract terms including arbitration provision and that unless parties could prove defense to arbitration, FAA required arbitration).

---

Because we have concluded that TBC's evidence established that 304 Construction's claims are within the scope of the parties' agreement to arbitrate, we do not reach this alternative argument. *See* Tex. R. App. P. 47.1.

**Defenses to Arbitration**

304 Construction argues that it submitted the defenses of fraudulent inducement and failure of consideration, "along with the evidence in support thereof." To defeat arbitration, it was 304 Construction's burden to present evidence to establish one of its pleaded defenses and to prove that the defense "specifically relates" to the agreement to arbitrate, "not the contract as a whole." *In re FirstMerit Bank*, 52 S.W.3d at 756.

*Fraudulent Inducement*

Fraudulent inducement is established when the elements of fraud are established "as they relate to an agreement between the parties." *In re ReadyOne Indus.*, 400 S.W.3d 164, 169 (Tex. App.—El Paso 2013, orig. proceeding) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)); *see Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (stating elements of fraud (citing *In re FirstMerit Bank*, 52 S.W.3d at 758)).

As support for its defense of fraudulent inducement, 304 Construction relies on the CFO's declaration that "TBC denies that it owes [304 Construction] the additional payment that [304 Construction] has demanded, which is outside what was expressed in the Purchase Order whose terms were agreed and accepted by [304 Construction]." 304 Construction describes this declaration as a "fraudulent representation [that] should not force [it] to comply with terms of an agreement that [TBC] has not complied with" and that the second motion "should be denied as a result of [TBC]'s fraud and in order to prevent [TBC] from continuing to benefit from their underlying fraud." But "[t]he mere failure to perform a contract is not evidence of fraud." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Further, it was 304 Construction's burden to present evidence

18

that TBC "made representations with the intent to deceive and with no intention of performing as represented," and the evidence must be relevant to TBC's intent at the time the representation was made. *Id.* The CFO's declaration after 304 Construction's suit was filed is not evidence of a representation that was made when the alleged change in scope occurred. Thus, we conclude that 304 Construction did not meet its burden to avoid arbitration based on the defense of fraudulent inducement. *See Yong Yu*, 2022 Tex. App. LEXIS 3903, at *5.

*Failure of Consideration*

The "failure of consideration 'occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails.'" *Id.* at *12 (quoting *Doskocil Mfg. Co. v. Sang Nguyen*, No. 02-16-00382-CV, 2017 Tex. App. LEXIS 5961, at *15 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op.)); *see id.* at *11–12 (explaining difference between lack of consideration and failure of consideration); *see also Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.) (discussing affirmative defense of failure of consideration).

304 Construction argues that there was a failure of consideration because TBC "agreed to pay for the expanded scope of construction services" and that this "failure of consideration discharges the duty of [304 Construction] to submit to arbitration as [it] is not a valid arbitration agreement upon the failure of such consideration." But partial failure to make payments under a contract does not constitute failure of consideration. *See Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 312 (Tex. App.—Dallas 2010, no pet.) ("A partial failure of consideration does not invalidate the contract but entitles the injured party to a suit for damages."). And 304 Construction did not present evidence to support its factual assertion that

TBC agreed to pay more than the stated amount in the Purchase Order and has not explained how an agreement to change the scope of the services after the Purchase Order was accepted would be a "supervening cause arising after the contract is formed" or why such an agreement would not be subject to the parties' agreement to arbitrate such a dispute. *See Pennzoil Co.*, 30 S.W.3d at 498 (stating that if "facts alleged" to support claim are factually intertwined with contract that is subject to arbitration agreement, claim will be arbitrable). Thus, we conclude that 304 Construction did not meet its burden to avoid arbitration based on its defense of failure of consideration. *See Yong Yu*, 2022 Tex. App. LEXIS 3903, at *5.

## CONCLUSION

Because TBC established as a matter of law that a valid arbitration agreement existed between the parties and that 304 Construction's claims fell within its scope and 304 Construction did not present evidence to contest TBC's proof or meet its burden to avoid arbitration based on its pleaded defenses, we conclude that the trial court abused its discretion in denying TBC's second motion to abate and compel arbitration. *See In re Whataburger Rests. LLC*, 645 S.W.3d at 194; *Murdock*, 2013 Tex. App. LEXIS 5638, at *7. Thus, we sustain TBC's issue, reverse the trial court's order denying TBC's second motion to abate and compel arbitration, and remand the case to the trial court.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Reversed and Remanded

Filed: May 17, 2024

20